UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RODNEY D. MORRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:12CV2129 HEA |
| ) | |
| CAROLYN W. COLVIN[1] ) | |
| Commissioner of Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's request for judicial review under 28 U.S.C. § 405(g) of the final decision of Defendant denying Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq* and Supplemental Security Income (SSI) under Title XVI, 42 U.S.C. §1381, *et seq*. For the reasons set forth below, the Court affirms the Commissioner's denial of Plaintiff's applications.

## FACTS AND BACKGROUND

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

When Plaintiff appeared to testify at the hearing he was 47 years old. He has completed his high school equivalence by acquiring his GED. Plaintiff has had training/employment as a banquet captain, dining room supervisor and maitre'd, as well as a restaurant server. The last time he worked was in January, 2009. The ALJ found Plaintiff had the severe impairments of: major depressive disorder, an anxiety disorder with panic attacks, agoraphobia, flexion deformities of the 4 and 5 fingers of the right hand, and right shoulder residuals from surgical reattachment of the right arm.

A vocational expert also testified. The VE testified, in relation to an onset date of July 1, 2009, and in response to a hypothetical, that Plaintiff could not perform light work. The VE also concluded from the hypothetical question that Plaintiff could occasionally lift 20 pounds and can frequently lift 10 pounds. He can stand/walk six hours in an eight hour workday and sit six hours. He cannot reach overhead with his right arm and can only occasionally perform fingering/fine manipulation and handling/gross manipulation with his right hand. He must avoid concentrated exposure to unprotected heights. The Plaintiff should not work in a setting which includes constant/regular contact with the general public and should not perform work which includes more than infrequent handling of customer

complaints. He can understand, remember, and carry out at least simple instructions and non-detailed tasks. Plaintiff should not work in close proximity to alcohol or controlled substances.

Plaintiff's application for social security and supplemental security income benefits under Titles II, 42 U.S.C. §§ 401, *et seq*., and XVI of the Act, 42 U.S.C. § 1381, *et seq*., was denied on September 10, 2010. On September 29, 2010, Plaintiff filed a timely Request for Hearing by Administrative Law Judge. After a hearing, the ALJ issued an unfavorable decision dated March 17, 2011. On May 9, 2011, Plaintiff filed a Request for Review of Hearing Decision with the Appeals Council. The Appeals Council denied Plaintiff's request for review on September 21, 2012. Thus, the decision of the ALJ became the final decision of the agency.

**Standard For Determining Disability**

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir.2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

A five-step regulatory framework is used to determine whether an individual claimant qualifies for disability benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a); see also *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir.2011) (discussing the five-step process). At Step One, the ALJ determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I); *McCoy*, 648 F.3d at 611. At Step Two, the ALJ determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611.

At Step Three, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not,

the ALJ proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir.2009) (citing 20 C.F.R. § 404.1545 (a)(1)); see also 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. Id. At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a

significant number of jobs within the national economy.  *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir.2012).

## ALJ's Decision

In the application of the five-step analysis, the ALJ in this case determined at Step One the ALJ found Plaintiff had not performed substantial gainful activity since the alleged onset date of disability of July 1, 2009.  At Step Two, the ALJ found Plaintiff's severe impairments were: major depressive disorder; anxiety disorder with panic attacks and agoraphobia; flexion deformities of the 4 and 5 fingers of the right hand; and right shoulder residuals from surgical reattachment of the right arm.  At Step Three the ALJ concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

Prior to Step Four the ALJ found Plaintiff had the residual functional capacity (RFC) to perform light work:  except…The claimant cannot reach overhead with his right arm and can only occasionally perform fingering/fine manipulation and handling/gross manipulation with his right hand. He must avoid concentrated exposure to unprotected heights.  The claimant can understand, remember and carry out at least simple instructions and non-detailed tasks.  He should not work in a setting which includes constant/regular contact with the

general public and should not perform work which includes more than infrequent handling of customer complaints. He should not work in close proximity to alcohol or controlled substances.  At Step Four, the ALJ found Plaintiff was unable to perform past relevant work.  At Step Five, considering the age, education, work experience, and residual functional capacity, the ALJ found, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform.

## Standard For Judicial Review

The Court's role in reviewing the Commissioner's decision is to determine whether the decision "'complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.'" *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir.2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir.2008)). "Substantial evidence is 'less than preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir.2012) (quoting *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir.2009)).  In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision.  Id.  However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'"  Id.

7

(quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir.2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir.2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir.2005)). The Court should disturb the administrative decision only if it falls outside the available "zone of choice" of conclusions that a reasonable fact finder could have reached. *Hacker v.Barnhart*, 459 F.3d 934, 936 (8th Cir.2006).

## Discussion

In his appeal of the Commissioner's decision, Plaintiff makes the following arguments: (1) The ALJ's finding that Plaintiff had a moderate to marked restriction in concentration, persistence and pace was inconsistent with the RFC determination, which failed to include any restriction in concentration, persistence or pace. This constituted an incomplete analysis of the evidence; (2) Plaintiff submitted additional evidence that was material to his medically determinable impairments during the period of disability and as such the decision of the ALJ is contrary to the weight of the evidence currently of record; (3) The ALJ failed to properly consider opinion evidence; (4) The ALJ failed to properly consider credibility; (5) The ALJ failed to fully and fairly develop the record.

**The ALJ's finding that Plaintiff had a moderate to marked restriction in concentration, persistence and pace was inconsistent with the RFC determination, which failed to include any restriction in concentration, persistence or pace. This constituted an incomplete analysis of the evidence.**

Plaintiff argues that the ALJ's mental RFC finding is inconsistent with his step two finding that Plaintiff was moderately to markedly limited at concentration, persistence, or pace. Evaluation of mental impairments at the second and third stages of the sequential evaluation, requires the ALJ to use the "special technique" set out in 20 C.F.R. sections 404.1520a and 416.920a. The purpose of this technique is to evaluate the severity of the claimant's mental impairments and to determine whether they meet or equal a listing. *See* 20 C.F.R. §§ 404.1520a(d), 416.920a(d). The technique is **not** a part of the ALJ's RFC assessment. Indeed, Social Security Ruling 96-8p specifically cautions that the ALJ "must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process". The ALJ's step-four RFC determination "requires a more detailed assessment" than the special technique provides. *See Lacroix v. Barnhart*, 465 F.3d 881, 888 & n.3 (8th Cir. 2006) (rejecting the claimant's argument that the ALJ's step-two findings conflicted with his RFC analysis at step four because "[e]ach step in the disability determination entails a separate analysis and legal standard"). Thus, the ALJ's finding that

9

Plaintiff was moderately to markedly limited at concentration, persistence, or pace was not part of his RFC assessment.

The evidence did not support a need for greater concentration, persistence, or pace restrictions in the RFC. Plaintiff claimed he had trouble concentrating, remembering, completing tasks, and following instructions (Tr. 165). However, Dr. Hogins observed that he had normal attention and concentration, and Dr. Gangwani found that Plaintiff had good recall (Tr. 17, 535, 666). In fact, Plaintiff passed the short term memory and attention tests on his MMSE (Tr. 667). Plaintiff was also able to complete shopping trips to the grocery store, clean his home, and prepare meals. There was, therefore, no need for need for greater restrictions. The point is therefore overruled and the ALJ is affirmed on this point.

**Plaintiff submitted additional evidence that was material to his medically determinable impairments during the period of disability and as such the decision of the ALJ is contrary to the weight of the evidence currently of record.**

The Plaintiff argues at this point that the submitted new evidence was not considered or evaluated by the ALJ[2]. The suggestion is that the Appeals Council did not consider the assessment of Dr. Hogins. The Appeals Council did in fact consider the assessment, and Dr. Hogins's opinion did not change the weight of the

---

[2] The evidence referred relates to an assessment by Dr. Hogins that was submitted as part of the request to review the decision of the AlJ. This evidence was submitted after the hearing was completed.

evidence in the record as a whole. The Appeals Council stated, "In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council" (Tr. 1). The Order listed as one of the exhibits: "Assessment for Social Security Disability Claim, dated February 24, 2011, and Mental Residual Functional Capacity Assessment, dated February 25, 2011, by Joshua Hogins, D. O." (Tr. 4). The Appeals Council then found that the additional evidence "[did] not provide a basis for changing the Administrative Law Judge's decision" (Tr. 1). Thus, "[w]here . . . the Appeals Council considers new evidence but denied review, [the Court] must determine whether the ALJ's decision was supported by substantial evidence on the record as a whole, including the new evidence." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir.2007).

The record before the ALJ contained Dr. Hogins's treatment notes (Tr. 655-67). The ALJ discussed the treatment notes at length in his decision (Tr. 16-18). He noted that Plaintiff told Dr. Hogins he was "doing pretty well right now" during their initial visit on July 16, 2010 (Tr. 17, 664). Dr. Hogins observed that Plaintiff's "depressive and anxiety symptoms [were] markedly improved" with medication (Tr. 17, 665). He stated that Plaintiff had a stable and logical flow of thought, and normal attention and concentration (Tr. 17, 666). Dr. Hogins said that Plaintiff was responding well to therapy (Tr. 17, 666). He assigned Plaintiff a

11

Global Assessment of Functioning (GAF) score of 61-65, consistent with "mild" symptoms in a person who is "generally functioning pretty well." (Tr. 17, 666)[3].

It was noted that Dr. Hogins treated Plaintiff three more times—in August, November, and December 2010 (Tr. 18, 658-59, 662). The ALJ observed that Dr. Hogins listed Plaintiff as doing well and remaining stable during each visit (Tr. 18, 656, 659, 662). Although Plaintiff continued to have some occasional panic attacks, Dr. Hogins stated that he seemed to cope with the attacks "fairly well using relaxation techniques and other skills" (Tr. 18, 659). Additionally, in November 2010, Dr. Hogins administered a mini-mental status examination (MMSE) and Plaintiff scored "quite well", passing the rudimentary tests for short term memory and attention (Tr. 667).

Despite Dr. Hogins's positive findings during Plaintiff's treatment, his mental RFC assessment was highly restrictive and inconsistent with his previous observations. *See, e.g., Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (ALJ could properly discount a therapist's RFC when contemporaneous treatment notes showed that the claimant had "improved" and was "fair"). Dr. Hogins stated that Plaintiff was markedly limited at maintaining attention, concentration, and

---

[3] A clinician uses the GAF scale to assess a patient's level of psychological, social, and occupational functioning. See Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed. text revision 2000). A score of 61 to 70 corresponds with "mild" symptoms in a person who is "generally functioning pretty well."

focus (Tr. 730). However, in July 2010 he noted that Plaintiff had normal attention and concentration. Dr. Hogins also stated that Plaintiff was moderately limited at understanding, remembering, and carrying out simple work instructions (Tr. 730). But on the other hand Dr. Hogins found that Plaintiff had average intelligence and good insight during his November 2010 appointment (Tr. 658, 730).

Dr. Hogins's opinion did not change the weight of the evidence in the record. Therefore, the ALJ's conclusion will be affirmed.

**The ALJ failed to properly consider opinion evidence.**

The mental assessment from Kyle DeVore was considered by the ALJ, Ph.D., a non-examining agency psychologist. Plaintiff tries to convince this court that the ALJ failed to make clear which of Dr. DeVore's "three" assessments the ALJ credited. Dr. DeVore only submitted one mental RFC assessment though (Tr. 651). The other two exhibits were psychiatric review technique forms (Tr. 426, 639). Furthermore, Dr. DeVore's mental RFC assessment is aligned with the ALJ's RFC findings. He opined that Plaintiff was moderately limited at understanding, remembering, and carrying out detailed instructions. The ALJ restricted Plaintiff to jobs with simple instructions and non-detailed tasks . The ALJ correctly noted that his RFC finding was consistent with Dr. DeVore's mental assessment (Tr. 21).

The ALJ found that mental treatment notes from Dr. Gangwani and Dr. Hogins showed that Plaintiff was stable and doing pretty well. Both psychiatrists assigned Plaintiff GAF scores indicating only mild to moderate symptoms. Dr. Gangwani's and Dr. Hogins's provided positive findings. The ALJ, however, provided a number of mental RFC restrictions, including limiting Plaintiff's contact with the general public and restricting him to work with simple instructions and non-detailed tasks. The argument of Plaintiff fails.

**The ALJ failed to properly consider credibility**.

The ALJ appropriately questioned Plaintiff's credibility based on the lack of objective medical evidence to support his claims, his improvement with treatment, his poor work history, his activities of daily living, his inconsistent statements, and the lack of doctor imposed limitations. *See Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) ("Before determining a claimant's RFC, the ALJ first must evaluate the claimant's credibility.")

The objective medical evidence did not support the severity of Plaintiff's alleged mental impairments (Tr. 17-18). *See Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (an ALJ may determine that "subjective pain complaints are not credible in light of objective medical evidence to the contrary" (citation omitted)). For example, Plaintiff claimed limitations based on severe depression

14

and anxiety (Tr. 17, 35). He said that he had four panic attacks per week and had not seen a change in his condition since starting psychiatric treatment (Tr. 40-41). Suni Gangwani, M.D., a psychiatrist, found, however, that Plaintiff's affect was normal and stable in March 2010 (Tr. 17, 535). He observed that Plaintiff had good recall with preserved insight and judgment (Tr. 17, 535). Similarly, Dr. Hogins found that Plaintiff had "normal attention and concentration" (Tr. 666). The objective medical evidence from Plaintiff's treating psychiatrists was inconsistent with his alleged limitations.

Plaintiff's mental impairments improved with treatment (Tr. 18). *See Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling." (quoting *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009))). Dr. Hogins stated that Plaintiff's "depressive and anxiety symptoms [had] markedly improved" in July 2010. Plaintiff's mental impairments could be controlled with treatment, these impairments were not disabling.

The ALJ also noted that Plaintiff's prior work history and low earnings created a question as to the true reason for his unemployment (Tr. 19). *See Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) ("A lack of work history may indicate a lack of motivation to work rather than a lack of ability."); *Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996) (claimant's prior work

history, "characterized by fairly low earnings and some significant breaks in employment," cast doubt on his credibility). Plaintiff's summary earnings report showed that he never worked at the level of substantial gainful activity (Tr. 20, 145). This created some doubt relating to his motivation to work.

The Eighth Circuit has noted that activities which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility. *See Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001). For example, "acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking are inconsistent with subjective complaints of disabling pain." *Medhaug v. Astrue,* 578 F.3d 805, 817 (8th Cir. 2009). Here, Plaintiff testified that he cleaned his house and cooked. In his function report, he stated that he took care of his dogs. Plaintiff also said that he regularly went grocery shopping. He claimed he could drive a car and go out alone. His medical records indicated that he was driving alone in July 2009 (Tr. 17, 600).

In furtherance of the detailed credibility assessment the ALJ pointed out that Plaintiff made inconsistent statements regarding his marijuana and prescription drug use (Tr. 18-20). *See Karlix v. Barnhart*, 457 F.3d 742, 748 (8th Cir. 2006) ("[T]he ALJ found Karlix unreliable because his testimony at the administrative hearing regarding his consumption of alcohol conflicted with medical documentation."). Plaintiff testified that the last time he smoked marijuana was

January 2009 (Tr. 35). However, the ALJ noted Dr. Ganwani reported Plaintiff's continued marijuana use in March 2010 (Tr. 18, 535). Similarly, Plaintiff failed to initially report taking his friend's pain medication to William Feldner, D.O.

The ALJ pointed out that, despite Plaintiff's allegations of both physical and mental limitations, none of his physicians ever instructed him to restrict his activity. *See Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003) ("As for Hensley's claims of persistent dizziness and blackout spells . . . no functional restrictions were placed on Hensley's activities, a fact that . . . is inconsistent with a claim of disability.")

The ALJ was in the best position to evaluate Plaintiff's credibility when he testified at the hearing. Because the ALJ had good reasons for his credibility finding, the Court will defer to the ALJ's determination. *See Cox*, 471 F.3d at 907 ("Because the ALJ [is] in a better position to evaluate credibility, we defer to his credibility determinations as long as they were supported by good reasons and substantial evidence.").

**The ALJ failed to fully and fairly develop the record.**

The essence of Plaintiff's position is that the ALJ should have sought a medical opinion from Dr. Hogins before rendering a decision. Plaintiff bears the burden to demonstrate that the record was not fully developed. Plaintiff must show

17

both a failure to develop necessary evidence and unfairness or prejudice resulting therefrom. *See Haley v. Massanari*, 258 F.3d 742, 749-50 (8th Cir. 2001). Here, the record consists of almost six-hundred pages of medical records, including Dr. Hogins's treatment notes, Dr. DeVore's mental RFC assessment, and Plaintiff's hospital records (Tr. 258, 651, 659-666, 855). *See id*. (ALJ did not err by failing to order a consultative examination because "there was substantial evidence in the record to allow the ALJ to make an informed decision").

The ALJ's findings were clearly based upon the record as a whole. The ALJ summarized Plaintiff's testimony regarding his limitations, the treatment notes regarding his impairments, the medical opinions in the record, and the ALJ's specific credibility findings. The ALJ applied the proper standard to the facts and the determination of Plaintiff's RFC and his ability to perform his past relevant work is supported by the record as a whole.

**Conclusion**

After careful review, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. The decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social

Security is affirmed.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 18th day of February , 2014.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE